## UNITED STATES BANKRUPTCY COURT
## DISTRICT OF MASSACHUSETTS

_____

In Re:

**DOROTHY B. O'CONNOR,**  **Chapter 11**
        Debtor,  No. 07-13517-WCH

_____

### MOTION FOR APPROVAL OF EMPLOYMENT OF
### REAL ESTATE BROKER

Now comes the Debtor and moves that this Court approve the employment of Gloria Cochran as a real estate broker. As grounds therefore the Debtor states:

1. The Debtor filed a voluntary petition for relief under Chapter 11 of the U.S. Bankruptcy Code on June 4, 2007.

2. The Debtor owns four parcels of real estate, two in Ocala, Florida and two in Dorchester, Ma. The Debtor wishes to sell the two parcels in Ocala, Florida.

3. The Debtor believes that the sale of the Florida real estate is in the best interests of the estate and all parties in interest. It is anticipated that the sale of these properties will enable her to formulate a plan to pay all secured, priority and unsecured creditors.

4. The Debtor wishes to employ Gloria Cochran of Century 21 Affilaites, 4975 US Highway 27, Ocala, FL 34482, (tel. 352-208-0842) to facilitate the sale of her property at 7 Spring Trace, Ocala, Fla. and at 9 Bahia Court, Ocala, Fla.

5. The Debtor desires to employ Gloria Cochran according to the terms of the two proposed brokerage agreements that are attached as Exhibit "A".

6. The professional services that the agent is to render include: a.) consultations with Debtor and Debtor's counsel with respect to sale of the property; and

b.) performing other services that may be customarily performed by a real estate agent with respect to the sale of real property.

7. represents no other entity in connection with this case. She is a disinterested person as that term is defined in 11 U.S.C. section 101(13).

8. has agreed to provide services at, and request compensation the amount of 6% of the gross price if property is sold. Such commission will be paid only if, as, and when the property is sold and the deed is recorded.

9. Gloria Cochran's Affidavit is included as Exhibit "B".

WHEREFORE, the Debtor respectfully requests that it be authorized to hire Gloria Cochran as the real estate broker to sell the real property located at 7 Spring Trace, Ocala, Fla. and at 9 Bahia Court, Ocala, Fla. according to the terms of the agreements attached hereto.

Respectfully submitted,

/ s/William T. Stevens  
William T. Stevens, #480260  
Counsel to Debtor  
98 North Washington Street  
Suite 305  
Boston, Ma. 02114  
(617) 720-0991

## **CERTIFICATE OF SERVICE**

      The undersigned hereby certifies that a copy of the attached Motion to Employ Real Estate Agent was served upon the U.S. Trustee and all counsel of record by electronic notice through the Court's ECF system.

                                        /s/William T. Stevens

EXHIBIT "A"

Case 07-13517    Doc 19    Filed 06/27/07    Entered 06/27/07 14:18:54    Desc Main
Document    Page 4 of 13

**Exclusive Right of Sale Listing Agreement**
FLORIDA ASSOCIATION OF REALTORS®

This Exclusive Right of Sale Listing Agreement ("Agreement") is between _Dorothy Lindo_____ ("Seller") and _Century 21 Affiliates_____ ("Broker").

1. **AUTHORITY TO SELL PROPERTY:** Seller gives Broker the EXCLUSIVE RIGHT TO SELL the real and personal property (collectively "Property") described below, at the price and terms described below, beginning the __25__ day of __June__, __2007__, and terminating at 11:59 p.m. the __26__ day of __December__ __2007__ ("Termination Date"). Upon full execution of a contract for sale and purchase of the Property, all rights and obligations of this Agreement will automatically extend through the date of the actual closing of the sales contract. Seller and Broker acknowledge that this Agreement does not guarantee a sale. This Property will be offered to any person without regard to race, color, religion, sex, handicap, familial status, national origin or any other factor protected by federal, state or local law. Seller certifies and represents that he/she/it is legally entitled to convey the Property and all improvements.

2. **DESCRIPTION OF PROPERTY:**
   (a) Real Property Street Address: __7 Spring Trace__
   __Ocala, FL 34472__
   Legal Description: __PID# 9009-0048-12__

   (b) Personal Property, including appliances: __range_____ ❏ See Attachment _____

   (c) Occupancy: Property ☒ is ❏ is not currently occupied by a tenant. If occupied, the lease term expires _____ ❏ See Attachment _____

3. **PRICE AND TERMS:** The property is offered for sale on the following terms, or on other terms acceptable to Seller:
   (a) Price: _____
   (b) Financing Terms: ☒ Cash ☒ Conventional ❏ VA ❏ FHA ❏ Other _____
   ❏ Seller Financing: Seller will hold a purchase money mortgage in the amount of $__Ø__ with the following terms: __N/A__
   ❏ Assumption of Existing Mortgage: Buyer may assume existing mortgage for $__Ø__ plus an assumption fee of $__Ø__. The mortgage is for a term of __Ø__ years beginning in __Ø__, at an interest rate of __Ø__% ❏ fixed ❏ variable (describe) __N/A__. Lender approval of assumption ❏ is required ❏ is not required ❏ unknown. Notice to Seller: You may remain liable for an assumed mortgage for a number of years after the Property is sold. Check with your lender to determine the extent of your liability. Seller will ensure that all mortgage payments and required escrow deposits are current at the time of closing and will convey the escrow deposit to the buyer at closing.
   (c) Seller Expenses: Seller will pay mortgage discount or other closing costs not to exceed __Ø__% of the purchase price; and any other expenses Seller agrees to pay in connection with a transaction.

4. **BROKER OBLIGATIONS AND AUTHORITY:** Broker agrees to make diligent and continued efforts to sell the Property until a sales contract is pending on the Property. Seller authorizes Broker to:
   (a) Advertise the Property as Broker deems advisable in newspapers, publications, computer networks, including the Internet and other media; place appropriate transaction signs on the Property, including "For Sale" signs and "Sold" signs (once Seller signs a sales contract); and use Seller's name in connection with marketing or advertising the Property;
   (b) Obtain information relating to the present mortgage(s) on the Property.
   (c) Place the property in a multiple listing service(s) (MLS). Seller authorizes Broker to report to the MLS/Association of Realtors® this listing information and price, terms and financing information on any resulting sale. Seller authorizes Broker, the MLS and/or Association of Realtors® to use, license or sell the active listing and sold data.
   (d) Provide objective comparative market analysis information to potential buyers; and
   (e) (Check if applicable) ❏ Use a lock box system to show and access the Property. A lock box does not ensure the Property's security; Seller is advised to secure or remove valuables. Seller agrees that the lock box is for Seller's benefit and releases Broker, persons working through Broker and Broker's local Realtor Board/Association from all liability and responsibility in connection with any loss that occurs. ❏ Withhold verbal offers. ❏ Withhold all offers once Seller accepts a sales contract for the Property.
   (f) Act as a transaction broker.

**SELLER OBLIGATIONS:** In consideration of Broker's obligations, Seller agrees to:
(a) Cooperate with Broker in carrying out the purpose of this Agreement, including referring immediately to Broker all inquiries regarding the Property's transfer, whether by purchase or any other means of transfer.
(b) Provide Broker with keys to the Property and make the Property available for Broker to show during reasonable times.
(c) Inform Broker prior to leasing, mortgaging or otherwise encumbering the Property.

(d) To indemnify Broker and hold Broker harmless from losses, damages, costs and expenses of any nature, including attorney's fees, and from liability to any person, that Broker incurs because of (1) Seller's negligence, representations, misrepresentations, actions or inactions, (2) the use of a lock box, (3) the existence of undisclosed material facts about the Property, or (4) a court or arbitration decision that a broker who was not compensated in connection with a transaction is entitled to compensation from Broker. This clause will survive Broker's performance and the transfer of title.
(e) To perform any act reasonably necessary to comply with FIRPTA (Internal Revenue Code Section 1445).
(f) Make all legally required disclosures, including all facts that materially affect the Property's value and are not readily observable or known by the buyer. Seller represents there are no material facts (building code violations, pending code citations, unobservable defects, etc.) other than the following: none noted
_____
Seller will immediately inform Broker of any material facts that arise after signing this Agreement.
(g) Consult appropriate professionals for related legal, tax, property condition, environmental, foreign reporting requirements and other specialized advice.

6. **COMPENSATION:** Seller will compensate Broker as specified below for procuring a buyer who is ready, willing and able to purchase the Property or any interest in the Property on the terms of this Agreement or on any other terms acceptable to Seller. Seller will pay Broker as follows (plus applicable sales tax):
(a) ___6___% of the total purchase price OR $___∅___ in the sales contract. However, closing is not a prerequisite for Broker's fee being earned, no later than the date of closing specified in the sales contract. However, closing is not a prerequisite for Broker's fee being earned.
(b) ___∅___ ($ or %) of the consideration paid for an option, at the time an option is created. If the option is exercised, Seller will pay Broker the paragraph 6(a) fee, less the amount Broker received under this subparagraph.
(c) ___∅___ ($ or %) of gross lease value as a leasing fee, on the date Seller enters into a lease or agreement to lease, whichever is soonest. This fee is not due if the Property is or becomes the subject of a contract granting an exclusive right to lease the Property.
(d) Broker's fee is due in the following circumstances: (1) If any interest in the Property is transferred, whether by sale, lease, exchange, governmental action, bankruptcy or any other means of transfer, regardless of whether the buyer is secured by Broker, Seller or any other person. (2) If Seller refuses or fails to sign an offer at the price and terms stated in this Agreement, defaults on an executed sales contract or agrees with a buyer to cancel an executed sales contract. (3) If, within ___∅___ days after Termination Date ("Protection Period"), Seller transfers or contracts to transfer the Property or any interest in the Property to any prospects with whom Seller, Broker or any real estate licensee communicated regarding the Property prior to Termination Date. However, no fee will be due Broker if the Property is relisted after Termination Date and sold through another broker.
(e) Retained Deposits: As consideration for Broker's services, Broker is entitled to receive ___50___% of all deposits that Seller retains as liquidated damages for a buyer's default in a transaction, not to exceed the paragraph 6(a) fee.

7. **COOPERATION AND COMPENSATION WITH OTHER BROKERS:** Broker's office policy is to cooperate with all other brokers except when not in Seller's best interest: ☒ and to offer compensation in the amount of ___3___% of the purchase price or $___∅___ to Buyer's agents, who represent the interest of the buyers, and not the interest of Seller in a transaction; ☒ and to offer compensation in the amount of ___3___% of the purchase price or $___∅___ to a broker who has no brokerage relationship with the Buyer or Seller; ☒ and to offer compensation in the amount of ___3___% of the purchase price or $___∅___ to Transaction brokers for the Buyer; ☐ None of the above (if this is checked, the Property cannot be placed in the MLS.)

8. **BROKERAGE RELATIONSHIP:**

**TRANSACTION BROKER NOTICE**
As a transaction broker, __Century 21 Affiliates__ and its associates, provides to you a limited form of representation that includes the following duties:
1. Dealing honestly and fairly;
2. Accounting for all funds;
3. Using skill, care, and diligence in the transaction;
4. Disclosing all known facts that materially affect the value of residential real property and are not readily observable to the buyer;
5. Presenting all offers and counteroffers in a timely manner, unless a party has previously directed the licensee otherwise in writing;
6. Limited confidentiality, unless waived in writing by a party. This limited confidentiality will prevent disclosure that the seller will accept a price less than the asking or listed price, that the buyer will pay a price greater than the price submitted in a written offer, of the motivation of any party for selling or buying property, that a seller or buyer will agree to financing terms other than those offered, or of any other information requested by a party to remain confidential; and
7. Any additional duties that are entered into by this or by separate written agreement.
Limited representation means that a buyer or seller is not responsible for the acts of the licensee. Additionally, parties are giving up their rights to the undivided loyalty of the licensee. This aspect of limited representation allows a licensee to facilitate a real estate transaction by assisting both the buyer and the seller, but a licensee will not work to represent one party to the detriment of the other party when acting as a transaction broker to both parties.

Ⓧ _____    Ⓧ _____    _____
Date                                                Signature                                             Signature

-11tb    Rev. 7/06    © 2006    Florida Association of REALTORS®    All Rights Reserved

9. **CONDITIONAL TERMINATION:** At **Seller's** request, **Broker** may agree to conditionally terminate this Agreement. If **Broker** agrees to conditional termination, **Seller** must sign a withdrawal agreement, reimburse **Broker** for all direct expenses incurred in marketing the Property and pay a cancellation fee of $ _____ plus applicable sales tax. **Broker** may void the conditional termination and **Seller** will pay the fee stated in paragraph 6(a) less the cancellation fee if **Seller** transfers or contracts to transfer the Property or any interest in the Property during the time period from the date of conditional termination to Termination Date and Protection Period, if applicable.

10. **DISPUTE RESOLUTION:** This Agreement will be construed under Florida law. All controversies, claims and other matters in question between the parties arising out of or relating to this Agreement or the breach thereof will be settled by first attempting mediation under the rules of the American Arbitration Association or other mediator agreed upon by the parties. If litigation arises out of this Agreement, the prevailing party will be entitled to recover reasonable attorney's fees and costs, unless the parties agree that disputes will be settled by arbitration as follows: **Arbitration:** By initialing in the space provided, **Seller** (__) (__), Listing Associate (✓) and Listing Broker (__) agree that disputes not resolved by mediation will be settled by neutral binding arbitration in the county in which the Property is located in accordance with the rules of the American Arbitration Association or other arbitrator agreed upon by the parties. Each party to any arbitration or litigation (including appeals and interpleaders) will pay its own fees, costs and expenses, including attorney's fees, and will equally split the arbitrators' fees and administrative fees of arbitration.

11. **MISCELLANEOUS:** This Agreement is binding on **Broker's** and **Seller's** heirs, personal representatives, administrators, successors and assigns. **Broker** may assign this Agreement to another listing office. Signatures, initials and modifications communicated by facsimile will be considered as originals. The term "buyer" as used in this Agreement includes buyers, tenants, exchangors, optionees and other categories of potential or actual transferees.

12. **ADDITIONAL TERMS:** None noted except that sale must be approved by U.S. Bankruptcy Court.

Date: 6/27/07   Seller's Signature: Dorothy O'Cain   Tax ID No: ___
Telephone #'s: Home (617) 512-2414   Work ___   Cell ___   Fax: ___
Address: ___                                                       E-mail: ___

Date: ___   Seller's Signature: ___   Tax ID No: ___
Telephone #'s: Home ___   Work ___   Cell ___   Fax: ___
Address: ___                                                       E-mail: ___

Date: 6/25/07   Authorized Listing Associate or Broker: Gloria Cochran
Brokerage Firm Name: Century 21 Affiliates
Address: 4975 US Hwy 27 Ocala, FL 34482   Telephone: (352) 479-3100

Copy returned to Customer on the 25 day of June, 2007 by: ☐ personal delivery ☐ mail ☒ E-mail ☐ facsimile.

The copyright laws of the United States (17 U.S. Code) forbid the unauthorized reproduction of this form by any means including facsimile or computerized forms.

ERS-11tb   Rev. 7/06   © 2006   Florida Association of REALTORS®   All Rights Reserved

**Exclusive Right of Sale Listing Agreement**
FLORIDA ASSOCIATION OF REALTORS®

This Exclusive Right of Sale Listing Agreement ("Agreement") is between _Dorothy Lindo_ ("Seller") and _Century 21 Affiliates_ ("Broker").

1. **AUTHORITY TO SELL PROPERTY:** Seller gives Broker the EXCLUSIVE RIGHT TO SELL the real and personal property (collectively "Property") described below, at the price and terms described below, beginning the _25_ day of _June_, _2007_; and terminating at 11:59 p.m. the _26_ day of _December_, _2007_ ("Termination Date"). Upon full execution of a contract for sale and purchase of the Property, all rights and obligations of this Agreement will automatically extend through the date of the actual closing of the sales contract. Seller and Broker acknowledge that this Agreement does not guarantee a sale. This Property will be offered to any person without regard to race, color, religion, sex, handicap, familial status, national origin or any other factor protected by federal, state or local law. Seller certifies and represents that he/she/it is legally entitled to convey the Property and all improvements.

2. **DESCRIPTION OF PROPERTY:**
   (a) Real Property Street Address: _9 Bahia Court Trace, Ocala, FL 34472_
   Legal Description: _PID # 9016-0207-18_
   (b) Personal Property, including appliances: ❑ See Attachment
   (c) Occupancy: Property ☒ is ❑ is not currently occupied by a tenant. If occupied, the lease term expires _____. ❑ See Attachment

3. **PRICE AND TERMS:** The property is offered for sale on the following terms, or on other terms acceptable to Seller:
   (a) Price: _140,000_
   (b) Financing Terms: ☒ Cash ☒ Conventional ☒ VA ☒ FHA ❑ Other _____
   ❑ Seller Financing: Seller will hold a purchase money mortgage in the amount of $_0_ with the following terms: _N/A_
   ❑ Assumption of Existing Mortgage: Buyer may assume existing mortgage for $_0_ plus an assumption fee of $_0_. The mortgage is for a term of _0_ years beginning in _0_, at an interest rate of _0_% ❑ fixed ❑ variable (describe) _N/A_. Lender approval of assumption ❑ is required ❑ is not required ❑ unknown. Notice to Seller: You may remain liable for an assumed mortgage for a number of years after the Property is sold. Check with your lender to determine the extent of your liability. Seller will ensure that all mortgage payments and required escrow deposits are current at the time of closing and will convey the escrow deposit to the buyer at closing.
   (c) Seller Expenses: Seller will pay mortgage discount or other closing costs not to exceed _0_% of the purchase price; and any other expenses Seller agrees to pay in connection with a transaction.

4. **BROKER OBLIGATIONS AND AUTHORITY:** Broker agrees to make diligent and continued efforts to sell the Property until a sales contract is pending on the Property. Seller authorizes Broker to:
   (a) Advertise the Property as Broker deems advisable in newspapers, publications, computer networks, including the Internet and other media; place appropriate transaction signs on the Property, including "For Sale" signs and "Sold" signs (once Seller signs a sales contract); and use Seller's name in connection with marketing or advertising the Property;
   (b) Obtain information relating to the present mortgage(s) on the Property.
   (c) Place the property in a multiple listing service(s) (MLS). Seller authorizes Broker to report to the MLS/Association of Realtors® this listing information and price, terms and financing information on any resulting sale. Seller authorizes Broker, the MLS and/or Association of Realtors® to use, license or sell the active listing and sold data.
   (d) Provide objective comparative market analysis information to potential buyers; and
   (e) (Check if applicable) ❑ Use a lock box system to show and access the Property. A lock box does not ensure the Property's security; Seller is advised to secure or remove valuables. Seller agrees that the lock box is for Seller's benefit and releases Broker, persons working through Broker and Broker's local Realtor Board/Association from all liability and responsibility in connection with any loss that occurs. ❑ Withhold verbal offers. ❑ Withhold all offers once Seller accepts a sales contract for the Property.
   (f) Act as a transaction broker.

**SELLER OBLIGATIONS:** In consideration of Broker's obligations, Seller agrees to:
(a) Cooperate with Broker in carrying out the purpose of this Agreement, including referring immediately to Broker all inquiries regarding the Property's transfer, whether by purchase or any other means of transfer.
(b) Provide Broker with keys to the Property and make the Property available for Broker to show during reasonable times.
(c) Inform Broker prior to leasing, mortgaging or otherwise encumbering the Property.

S-11tb    Rev. 7/06    © 2006    Florida Association of REALTORS®    All Rights Reserved

Page 1 of 3

(d) To indemnify **Broker** and hold **Broker** harmless from losses, damages, costs and expenses of any nature, including attorney's fees, and from liability to any person, that **Broker** incurs because of (1) **Seller**'s negligence, representations, misrepresentations, actions or inactions, (2) the use of a lock box, (3) the existence of undisclosed material facts about the Property, or (4) a court or arbitration decision that a broker who was not compensated in connection with a transaction is entitled to compensation from **Broker**. This clause will survive **Broker**'s performance and the transfer of title.

(e) To perform any act reasonably necessary to comply with FIRPTA (Internal Revenue Code Section 1445).

(f) Make all legally required disclosures, including all facts that materially affect the Property's value and are not readily observable or known by the buyer. **Seller** represents there are no material facts (building code violations, pending code citations, unobservable defects, etc.) other than the following: __none noted__

**Seller** will immediately inform **Broker** of any material facts that arise after signing this Agreement.

(g) Consult appropriate professionals for related legal, tax, property condition, environmental, foreign reporting requirements and other specialized advice.

**6. COMPENSATION:** **Seller** will compensate **Broker** as specified below for procuring a buyer who is ready, willing and able to purchase the Property or any interest in the Property on the terms of this Agreement or on any other terms acceptable to **Seller**. **Seller** will pay **Broker** as follows (plus applicable sales tax):

(a) __6__% of the total purchase price OR $__∅__ in the sales contract. However, closing is not a prerequisite for **Broker**'s fee being earned.

(b) __∅__ ($ or %) of the consideration paid for an option, at the time an option is created. If the option is exercised, **Seller** will pay **Broker** the paragraph 6(a) fee, less the amount **Broker** received under this subparagraph.

(c) __∅__ ($ or %) of gross lease value as a leasing fee, on the date **Seller** enters into a lease or agreement to lease, whichever is soonest. This fee is not due if the Property is or becomes the subject of a contract granting an exclusive right to lease the Property.

(d) **Broker**'s fee is due in the following circumstances: (1) If any interest in the Property is transferred, whether by sale, lease, exchange, governmental action, bankruptcy or any other means of transfer, regardless of whether the buyer is secured by **Broker**, **Seller** or any other person. (2) If **Seller** refuses or fails to sign an offer at the price and terms stated in this Agreement, defaults on an executed sales contract or agrees with a buyer to cancel an executed sales contract. (3) If, within __6__ days after Termination Date ("Protection Period"), **Seller** transfers or contracts to transfer the Property or any interest in the Property to any prospects with whom **Seller**, **Broker** or any real estate licensee communicated regarding the Property prior to Termination Date. However, no fee will be due **Broker** if the Property is relisted after Termination Date and sold through another broker.

(e) Retained Deposits: As consideration for **Broker**'s services, **Broker** is entitled to receive __50__% of all deposits that **Seller** retains as liquidated damages for a buyer's default in a transaction, not to exceed the paragraph 6(a) fee.

**7. COOPERATION AND COMPENSATION WITH OTHER BROKERS:** **Broker**'s office policy is to cooperate with all other brokers except when not in **Seller**'s best interest: ☑ and to offer compensation in the amount of __3__% of the purchase price or $__∅__ to Buyer's agents, who represent the interest of the buyers, and not the interest of **Seller** in a transaction; ☑ and to offer compensation in the amount of __3__% of the purchase price or $__∅__ to a broker who has no brokerage relationship with the Buyer or Seller; ☑ and to offer compensation in the amount of __3__% of the purchase price or $__∅__ to Transaction brokers for the Buyer; ☐ None of the above (if this is checked, the Property cannot be placed in the MLS.)

**8. BROKERAGE RELATIONSHIP:**

**TRANSACTION BROKER NOTICE**

As a transaction broker, __Century 21 Affiliates__ and its associates, provides to you a limited form of representation that includes the following duties:

1. Dealing honestly and fairly;
2. Accounting for all funds;
3. Using skill, care, and diligence in the transaction;
4. Disclosing all known facts that materially affect the value of residential real property and are not readily observable to the buyer;
5. Presenting all offers and counteroffers in a timely manner, unless a party has previously directed the licensee otherwise in writing;
6. Limited confidentiality, unless waived in writing by a party. This limited confidentiality will prevent disclosure that the seller will accept a price less than the asking or listed price, that the buyer will pay a price greater than the price submitted in a written offer, of the motivation of any party for selling or buying property, that a seller or buyer will agree to financing terms other than those offered, or of any other information requested by a party to remain confidential; and
7. Any additional duties that are entered into by this or by separate written agreement.

Limited representation means that a buyer or seller is not responsible for the acts of the licensee. Additionally, parties are giving up their rights to the undivided loyalty of the licensee. This aspect of limited representation allows a licensee to facilitate a real estate transaction by assisting both the buyer and the seller, but a licensee will not work to represent one party to the detriment of the other party when acting as a transaction broker to both parties.

__06/27/07__  __[signature]__
Date  Signature

_____
Signature

-11tb  Rev. 7/06  © 2006  Florida Association of REALTORS®  All Rights Reserved

**9. CONDITIONAL TERMINATION:** At **Seller's** request, **Broker** may agree to conditionally terminate this Agreement. If **Broker** agrees to conditional termination, **Seller** must sign a withdrawal agreement, reimburse **Broker** for all direct expenses incurred in marketing the Property and pay a cancellation fee of $ _____ plus applicable sales tax. **Broker** may void the conditional termination and **Seller** will pay the fee stated in paragraph 6(a) less the cancellation fee if **Seller** transfers or contracts to transfer the Property or any interest in the Property during the time period from the date of conditional termination to Termination Date and Protection Period, if applicable.

**10. DISPUTE RESOLUTION:** This Agreement will be construed under Florida law. All controversies, claims and other matters in question between the parties arising out of or relating to this Agreement or the breach thereof will be settled by first attempting mediation under the rules of the American Arbitration Association or other mediator agreed upon by the parties. If litigation arises out of this Agreement, the prevailing party will be entitled to recover reasonable attorney's fees and costs, unless the parties agree that disputes will be settled by arbitration as follows: **Arbitration:** By initialing in the space provided, **Seller** (____) (____), Listing Associate (_X_), and Listing Broker (____) agree that disputes not resolved by mediation will be settled by neutral binding arbitration in the county in which the Property is located in accordance with the rules of the American Arbitration Association or other arbitrator agreed upon by the parties. Each party to any arbitration or litigation (including appeals and interpleaders) will pay its own fees, costs and expenses, including attorney's fees, and will equally split the arbitrators' fees and administrative fees of arbitration.

**11. MISCELLANEOUS:** This Agreement is binding on **Broker's** and **Seller's** heirs, personal representatives, administrators, successors and assigns. **Broker** may assign this Agreement to another listing office. Signatures, initials and modifications communicated by facsimile will be considered as originals. The term "buyer" as used in this Agreement includes buyers, tenants, exchangors, optionees and other categories of potential or actual transferees.

**12. ADDITIONAL TERMS:** None noted except that sale must be approved by U.S. Bankruptcy Court.

Date: _____ Seller's Signature: X_____ Tax ID No: _____
Telephone #'s: Home (617) 512-2414  Work_____ Cell_____ Fax:_____
Address:_____
                                                                       E-mail:_____

Date: _____ Seller's Signature: _____ Tax ID No: _____
Telephone #'s: Home_____ Work_____ Cell_____ Fax:_____
Address:_____
                                                                       E-mail:_____

Date: 6/25/07 Authorized Listing Associate or Broker: Blaine Cochran
Brokerage Firm Name: Century 21 Aldinas
Address: 4975 US N. Hwy 27 Ocala, FL 34482    Telephone: (352) 479-3100

Copy returned to Customer on the 25 day of June 2007 by: ☐ personal delivery ☐ mail ☒ E-mail ☐ facsimile.

The copyright laws of the United States (17 U.S. Code) forbid the unauthorized reproduction of this form by any means including facsimile or computerized forms.

ERS-11tb  Rev. 7/06  © 2006  Florida Association of REALTORS®  All Rights Reserved

EXHIBIT "B"

UNITED STATES BANKRUPTCY COURT
DISTRICT OF MASSACHUSETTS

In Re:

**DOROTHY B. O'CONNOR,**
        Debtor,

Chapter 11
No. 07-13517-WCH

## AFFIDAVIT OF REAL ESTATE BROKER GLORIA COCHRAN PURSUANT TO 11 USC 329(a) AND MLBR 2014-1

1. I am a Real Estate Broker with Century 21 Affiliates, 4975 US Highway 27, Ocala, FL 34482 which firm is fully licensed under the laws of Florida.

2. I hereby represent that neither I nor any member of my firm holds or represents any interest adverse to the estate of the above-named Debtor.

3. My, and my firm's connections with the Debtor, creditors, or other Party in interest, their respective attorneys and accountants are as follows: NONE.

4. I hereby represent that I and each member of my firm is a "disinterested person" as that term is defined in 11 U.S.C. 101(13).

5. I have not agreed to share with any person (except members of my firm) the compensation to be paid for the services rendered in this case, except as follows: none. The Commissions due will be 6%.

6. I have not received a retainer in this case.

7. I shall amend this statement immediately upon my learning that (A) any of the within representations are incorrect or (B) there is any change of circumstances relating thereto.

8. I have reviewed the provisions of MLBR 2016-1.

I declare under penalty of perjury that the foregoing is true and correct.

*Gloria Cochran*
Gloria Cochran

Dated: June 25, 2007